GIGLIO, Appellant v. LASITA, Appellee.
(Two cases.)

Ohio Appeals, First District, Hamilton County.

Nos. 6285 & 6286. Decided June 28, 1943.

Mr. Walter K. Sibbald, Cincinnati, for appellants.
Mr. Robert Adair Black, Cincinnati and Mr. Robert F. Badgley, Cincinnati, for appellee.

132

## OPINION

By ROSS, P. J.

These appeals on questions of law were argued by counsel, under stipulation, as companion cases, and are to be considered together. The cases were so tried in the Common Pleas Court of Hamilton county, and from judgments in that court these appeals on questions of law are taken. There was in fact but one trial, one jury, but separate verdicts, and judgments.

In the first case (6285) predicated on an action brought by Angelina Giglio, the trial court rendered a judgment upon a verdict in favor of the defendant.

In the second case (6286) the trial court sustained a motion non obstante, and rendered judgment in favor of the defendant notwithstanding a verdict in favor of the plaintiff.

The first action (6285) was based upon a claim for personal injuries suffered by the plaintiff, Angelina Giglio.

The second action (6286) was based upon a claim of the husband of the plaintiff in the first case, for care and treatment of his wife, physicians' fees, nursing charges, and hospital bills.

From the record of the evidence introduced as contained in the bill of exceptions, it appears that Angelina Giglio was a neighbor, friend, and customer of the defendant, who conducted a produce business, or market stand on the south side of Elder Street in the City of Cincinnati. The defendant's stand was located directly opposite the place of business of the husband of Mrs. Giglio, on the north side of Elder Street.

At about noon on September 14, 1940, Mrs. Giglio, who hereafter will be called plaintiff, made certain purchases of fruits and vegetables from the son of the defendant at his market stand. She then, in company with her brother-in-law, made other purchases in stores on Elder Street. The plaintiff at this time was some eight months pregnant, and her brother-in-law accompanied her in order to carry her purchases. These latter purchases were carried to her husband's store on the north side of Elder Street.

The plaintiff had made an arrangement with the son of the defendant, who operated his father's stand, to convey all of her purchases in the truck of defendant to her home, including those purchases from others than the defendant. The defendant had so accommodated the plaintiff many times before. She testified that she did not ride on defendant's truck at any time until after her injuries were received. The court struck out the statement that she rode in defendant's truck after the accident.

After she collected her purchases, she waited at her husband's store until the defendant's son called to her across the street that the truck had arrived. The plaintiff and her brother-in-law then carried the purchases across the street to the truck. This crossing was made some distance from the regular street crossing, and not at any regularly designated crossing. The defendant's stand was located in the street adjacent to the south curb of Elder Street. The truck was parked along the north side of the stand, further to the north, out in the street. The plaintiff and her brother-in-law then began to place the purchases in the back of the truck. While doing so the driver of the truck came from the stand, passed around the rear of the truck, where plaintiff was standing, went to the front of the truck, entered the driver's seat, started the motor, and without warning backed the truck against plaintiff and her brother-in-law, and crushed the plaintiff between the rear of the truck and the front of an automobile parked some six feet back of the truck to the west. The plaintiff suffered certain injuries and sometime later gave premature birth to a still born child.

The driver of the automobile to the west against which the plaintiff was pushed by the truck, who was called by the defendant, testified that the plaintiff and her brother-in-law crossed Elder Street to the south together, and that the plaintiff then returned to the north side of Elder Street for more packages and just as she again reached the truck, while parallel to it, it began to move backward, that she placed her packages in the truck, and was pushed backward until she reached the front of the automobile of the witness, where she sat down upon the license plate, that the plaintiff was not "pinned" against his car, that she had her arms extended, her hands resting on the tail gate of the truck, which was hanging down.

This witness further stated that when plaintiff made the first trip "Mr. Lasita" helped plaintiff put her packages in the "cab" of the truck.

The fact that plaintiff made more than one trip across Elder Street was corroborated by the son of the defendant. This witness also stated that there was room enough between the truck and car for him to step in and carry plaintiff out, and that the truck had not pulled forward after it had backed up.

In proceeding to consider and pass upon the several assignments of error it is necessary to bear in mind that two distinct cases were tried together in the trial court, and the appeals from the judgments thereon must be here considered as separate proceedings. This necessity is emphasized by the results of the trial in the Court of Common Pleas, and the verdicts rendered therein.

In the case of the plaintiff, Mrs. Giglio, the verdict was in favor of the defendant. The appeal as to this case will now be considered.

A special interrogatory was submitted to the jury by the defendant. The answer to this interrogatory was not responsive. The verdict was read by the clerk, the jury questioned as to whether the verdict was its verdict, and the reply was in the affirmative. The following circumstances then transpired, as appears from the record:

"Unless there is some matter that counsel want to call to my attention, the jury are instructed to retire to the jury room, deliberate upon the case and when you have arrived at a verdict return it into court. When you go to the jury room you will select one of your number as a foreman, deliberate upon the case and when nine or more have agreed, you will sign the two forms of verdict to which you agree. In addition to that, if you arrive at a general verdict,—that is if your verdict is for the plaintiff or for the defendant, you will answer the following interrogatory:

"Did the crossing of Mrs. Giglio of Elder Street, between intersections, contribute in the slightest degree, directly or proximately to her injury?

"and whatever answer you may desire to give in this case must be by a concurrence of nine or more of your number, the same as in regard to the verdict and nine or more of your number agreeing upon the answer will sign the answer.

"You may now retire.

"MR. BADGLEY: General exception.

"MR. SIBBALD. General exception.

"And thereupon the jury retired and after consideration returned to the court room with the verdicts and the answers to the interrogatory as the same appear of record, which verdicts were received from the jury and read by the court.

"Thereupon counsel for defendant stated to the court that he believed the jury had not answered the interrogatory.

"Court adjourned until 9:00 o'clock Monday morning, with the usual caution to the jury.

"MONDAY, APRIL 20, 1942, 9:00 A. M.

"MORNING SESSION.

"Thereupon counsel for the defendant argued with the court to require the jury to make its answer to the interrogatory responsive to the question, and thereupon counsel for both sides conferred with the court in the court's chambers.

"Counsel for defendant did not press his motion to require the jury to make the answer responsive to the question. The court treated the actions of counsel as a withdrawal of the motion and the jury thereupon returned to the jury box.

"THE COURT: Members of the jury, the court is going to discharge you from further consideration of this case and you may return to the general jury room.

"And thereupon on April 20, 1942, defendant moved for judgment notwithstanding the general verdict in case No. A76534; and the defendant Angelino Giglio moved the court to set aside said verdict and for a new trial, which motion was filed on April 22, 1942 supported by an affidavit, a copy of which is made part hereof, which motion the court overruled, to all of which the said plaintiff by counsel then and there excepted.

"And the court granted the motion for judgment notwithstanding the general verdict in case No. A-76534, to all of which the plaintiff by counsel then and there excepted."

The plaintiff filed her motion more than three days from the return of the verdict, on Friday, April 17, 1942, but within three days of the discharge of the jury on Monday, April 20, 1942. It is the contention of plaintiff that her motion was "duly" filed as is required by §11578 GC, which provides in part: "The application must be made within three days after the verdict or decision is rendered."

When is the verdict of a jury "rendered"?

"Section 11420-9. Verdict, when and how rendered. In all civil actions a jury shall render a verdict upon the con-

currence of three-fourths or more of their number. The verdict shall be in writing and signed by each of such jurors concurring therein, and they must then be conducted into court, where their names shall be called by the clerk, and the verdict handed to the clerk by the foreman. The clerk must then read the verdict to the jury and make inquiry if it is the verdict of three-fourths or more of their number."

**Section 11420-10, GC,** provides:

"Poll of jury; further deliberation. Either party may require the jury to be polled, which shall be done by the clerk of court, asking each juror if it is his verdict. If on polling the jury more than one-fourth of the jury answer in the negative, or if the verdict in substance is defective, the jury must be sent out again for further deliberation."

**Section 11420-11 GC,** provides:

"Final verdict; defective verdict, how corrected. If the disagreement of more than one-fourth of the jury be not expressed and neither party requires the jury to be polled, or on the polling three-fourths or more of the jury answer affirmatively, the verdict is complete and the jury shall be discharged from the case. But when the verdict is defective in form only, with the assent of the jurors and before their discharge the court may correct it."

This matter was considered at length in **Landon v Holzberger, 43 Oh Ap 434, 439.**

It is true that §11420-17 GC provides: "The verdict and finding must be entered on the journal and filed with the clerk, but it is obvious from the sections quoted that such entry and filing are not precedent conditions to the **rendering** of a verdict from which latter incident the time for filing a motion for a new trial is calculated.

The irrelevant answer of the jury to the special interrogatory caused some confusion in the minds of counsel. The transcript of the docket and journal entries shows the following entries:

"April 17, 1942 at 9 o'clock, A. M.

"4/17/42 Min 199 Cause progressed third day and continued until Monday, April 20, 1942 at 9 o'clock, A. M.

"This day again came the parties herein by their attorneys, also came the jurors heretofore impaneled and sworn and the trial proceeded. The said jury having heard the testimony adduced in part and the hour of adjournment having arrived, said cause was continued until April 20, 1942, at 9 o'clock, A. M.

"4/20/42 Min 229 Cause progressed 3rd day. Verdict for defendant Augustine Lasita this verdict entered nunc pro tunc as of Friday, April 17, 1942."

"4/25/42 Min 230 Interrogatory answered, nunc pro tunc as of Friday, April 17, 1942.

"The following question of fact, submitted to the jury, who was instructed by the court to answer the same, is hereby returned with the general verdict, fully answered, as follows:

"Did the crossing by Mrs. Giglio of Elder Street, between intersections, contribute in the slightest degree, directly or proximately to her injury?

"Ans. Both plaintiff and defendant at fault.

"Respectfully submitted:

| | |
|---|---|
| Bay Field, Foreman | Helen Filter |
| Charlotte Tilleg | Julia Honhorst |
| Lebell Richter | Catherine A. O'Connor |
| Mary S. Klayer | Irene A. Maxwell |
| Henry L. Young | Francis Fox |
| Lucille W. Proctor | |

"4/20/42 Min 230 Cause progressed 4th day. Jury discharged. Caused continued.

"This day came the parties herein by their attorneys, also came the said jury heretofore impaneled and sworn, whereupon the court ordered the jury discharged and the cause continued.

"4/22/42 Motion for a new trial filed."

There is nothing in the bill of exceptions to indicate that any time elapsed from the return of the jury to the court room and the rendition of its verdict, which, again, according to the bill of exceptions was on Friday, the 17th of April, 1942. This court is bound by the record of the trial below as found in the bill of exceptions, the original papers and the docket and journal entries of the court. The only effect of the nunc pro tunc order of the trial court was to order the journalizing of the verdict on the following Monday, which order it realized should have been made on the previous Friday. As has been noted, the journalizing or entering of the

verdict does not affect the time of its rendition. The record shows nothing to indicate that the verdict was not rendered on Friday, April 17th, 1942. The motion for new trial was not filed until April 22nd, 1942, more than three days after the rendition of the verdict and it consequently was not duly filed, and is unavailing to cause this court to pass upon the weight of the evidence. Such a situation, however, does not prevent a review of the record to determine the existence of other errors affirmatively appearing therein, to the prejudice of the appellant, plaintiff. 2 O. Jur., 270.

Such assigned errors in case No. 6285, that of the plaintiff, Mrs. Giglio, are now considered.

The trial court permitted the introduction into evidence of an ordinance of the City of Cincinnati, making it a misde-. meanor to cross a street at other than a designated crossing. It also submitted a special charge to the jury, stating that a violation of such ordinance was "negligence in itself" and if such negligence "proximately caused or contributed to the accident" the plaintiff could not recover. It also submitted a special interrogatory to the jury, requiring an answer as to whether such crossing contributed in "the slightest degree directly or proximately to her injury."

Now all of this was totally irrelevant to any issue created by the evidence. It is obvious, taking either the statements of witnesses for the plaintiff or defendant that the crossing of the street had absolutely nothing to do with the situation which produced plaintiff's injury. In any event she had crossed the street and was behind the truck of the defendant. She did violate the law in crossing the street at a place other than a designated crossing, but the **crossing** had ceased when she stopped behind the truck. She was not continuing to cross the street. Whether the truck was stationary or moving, or whether she had made two trips or one, she was putting the packages on the truck when it moved backward. What possible connection could her path to the truck have with her presence behind it, whether from north to south? The negligence involved in her illegal passage across the street had ceased. An entirely new situation was presented. There was no factual issue presented involving her negligent action in crossing the street. The admission of the ordinance was erroneous, the giving of the special charge was erroneous, and the submission of the interrogatory was erroneous, and the answer to the interrogatory was wholly irrelevant to the question

All of these incidents of the trial undoubtedly led the jury to believe that her obvious violation of law in illegally crossing the street had something to do with her injury, when it is quite apparent that the only issues involved were whether or not the plaintiff was negligent in stepping behind the truck, and whether or not the defendant's employee was negligent in backing it under the circumstances shown in the record.

All of such errors were, therefore, manifestly prejudicial to the case of plaintiff, Mrs. Giglio.

The court also erred to the prejudice of plaintiff in the following special charge:

"3. I charge you that the mere fact that there was an accident in which plaintiff was injured, does not give her a right of recovery. Sometimes accidents happen without the fault of any one. There can be no recovery, unless defendant's negligence directly caused the injury; and such negligence cannot be inferred; it must be proved, to avail plaintiff, and proved by a preponderance of all the evidence. There also can be no recovery, if you find from the evidence, that the plaintiff herself was guilty of negligence contributing directly and proximately in the slightest degree to her injury."

The phrase "such negligence cannot be inferred" renders the charge prejudicially erroneous. **Miller, etc. v Harpest, 39 Oh Ap 184, 187.**

For the reasons given, the judgment in case No. 6285, entered upon a verdict rendered in favor of defendant is reversed and such case is remanded for a new trial.

In case No. 6286, the jury found in favor of the plaintiff. The court sustained a motion non obstante veredicto and rendered judgment also in this case for defendant. Certainly, the evidence being the same as that heretofore noted presented factual issues, upon which reasonable minds might differ as to the conclusions to be reached. It may be reasonably inferred that here again the fallacy of considering the illegal crossing of the street by plaintiff as a controlling factor indicating contributory negligence on her part was a dominating influence in causing the judgment contrary to the verdict of the jury.

As no motion for a new trial was filed by the defendant, the court has therefore no course but to here render the judg-

ment on the verdict which the trial court ought to have rendered. Had a motion for new trial been also filed by the defendant, as well as a motion for judgment non obstante, the court not ruling upon such motion for a new trial, the case would have had to be remanded to the trial court for appropriate action. **Thompson v Rutledge, 32 Oh Ap 537.** The fourth paragraph of the syllabus is:

"Where trial court denied motion for new trial on account of having granted judgment notwithstanding the verdict, reviewing court, on adjudging that judgment notwithstanding verdict should not have been given, should remand case to trial court for disposing of motion for new trial on the merits."

It is, therefore, the conclusion of this court that judgment on the verdict in case No. 6286 be here rendered for plaintiff.

HILDEBRANT, J., concurs.

MATTHEWS, J., concurring:
I concur in the results reached, but not in the interpretation of the legal significance of what took place on April 17th and 20th during the trial of these cases. In **39 O. Jur., 1087,** it is said: "The delivery and recording of a verdict are essential to its validity, because it is not perfected until it is recorded and a trial cannot be considered as ended until this is done."

It seems manifest that on April 17th the court halted the rendition of the verdict, so that it could consider counsel's contention that the answer to the special interrogatory was not responsive, and, thereupon, adjourned court until April 20th, with the jury still undischarged from its duty in the case. On April 20th, after some colloquy between court and counsel, the objection to the sufficiency of the answer to the interrogatory was withdrawn, and then, and not till then, was the jury discharged from further consideration of the case.

My interpretation of these events is, that while the verdict was in process of being rendered, the process was not completed and the verdict rendered as that term is used in §11420-9 et seq. GC, until April 20th.

The motion to set aside the verdict and for a new trial filed within three days thereafter was in time. The fact could not be changed or the time reduced by a nunc pro tunc entry.